UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARK SWEET,

        Plaintiff,

v.                               Case No. 8:24-cv-0009-MSS-AEP

MOTOROLA MOBILITY, LLC;
MOTOROLA SOLUTIONS, INC.; and
MOTOROLA SOLUTIONS
CONNECTIVITY, INC.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This cause comes before the Court upon Defendant Motorola Mobility, LLC's Unopposed Motion to Compel Arbitration and Stay Proceedings (Doc. 14). By the Motion, Defendant seeks stay this case and compel arbitration of all claims asserted in the Complaint (Doc. 1-1). The Motion indicates that it is unopposed by Plaintiff (Doc. 14, at 20–21). For the reasons stated in the Motion and set forth below, it is recommended that Defendant's Motion be GRANTED.

### I.    Background

Plaintiff alleges that he purchased and used a Motorola Moto E5 cell phone from Defendant (Doc. 1-1, ¶¶ 17, 31). Plaintiff alleges that his Motorola Moto E5 cell phone exploded in his hand and caused extensive damage to Plaintiff (Doc. 1-1, ¶¶ 13–15). Plaintiff filed a Complaint against Defendant, alleging Strict Products Liability, Negligence, and Breach of Implied Warranty (Doc. 1-1). Based on the Motorola Moto

E5's International Mobile Equipment Identity and Stock Keeping Unit numbers, Defendant states in the instant Motion that Plaintiff's phone was manufactured on November 6, 2018, and shipped with the following tow package inserts: (1) the Legal Safety & Regulatory booklet, and (2) the Motorola Moto E5 Plus User Guide (Doc. 14, at 3–4). Defendant states that the Legal Safety & Regulatory booklet and the Motorola Moto E5 Plus User Guide both include a hyperlink to a "Motorola legal" page (Doc. 14, at 4). Defendant states that listed on the Motorola legal page is a hyperlink to an Arbitration and opt-out provision (Doc. 14, at 4). In short, Defendant states that the Arbitration and opt-out provision requires JAMS arbitration for "[a]ny controversy or claim arising out of or relating to any Motorola product" and the application of Illinois law (Doc. 14, at 5). Further, the Motorola legal page provides 30 days for the consumer to opt-out of the Arbitration provision (Doc. 14, at 5–6). Based on the International Mobile Equipment Identity number, Defendant has determined that Plaintiff activated his Motorola Moto E5 on January 12, 2019 (Doc. 14, at 6). According to the Fragale Declaration, Motorola's terms and conditions were presented and accepted to activate Plaintiff's phone (Doc. 14-1, ¶ 10). Defendant states it has no record of Plaintiff rejecting or opting out of the arbitration agreement (Doc. 14, at 6).

## II.    Discussion

Arbitration agreements are governed by the Federal Arbitration Act (FAA), 9 U.S.C. § 2 (2006), which establishes a national policy that favors the resolution of

disputes by arbitration when the parties have contracted for that mode of dispute resolution. *Preston v. Ferrer*, 552 U.S. 346, 353 (2008). Section 2 of the FAA provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, *shall be valid, irrevocable, and enforceable*, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added).

The language of Section 2 clearly demonstrate that Congress strongly favors upholding arbitration agreements. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–20 (1985) (discussing the legislative history of the FAA and holding that the purpose behind the FAA is to ensure judicial enforcement of private arbitration agreements). Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24–25.

While the FAA establishes a strong presumption in favor of arbitration, the Supreme Court has also held that general state law principles of contract interpretation should apply when determining the scope of an arbitration clause. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). However, this does not negate that courts must still give "due regard . . . to the federal policy favoring arbitration" and resolve ambiguities as to the scope of the arbitration provision in favor of arbitration.

*Volt Info. Sciences, Inc. v. Bd. of Trustees Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76 (1989).

This Court must first determine the threshold issue of whether there is a valid agreement between the parties to arbitrate. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). As stated previously, state law principles of contract interpretation will apply. *First Options*, 514 U.S. at 944. Under Florida laws of contract interpretation, contracts should be interpreted in a manner that is "reasonable, practicable, sensible, and just." *7-Eleven, Inc. v. Stin, LLC*, 961 So.2d 977, 981 (Fla. 4th DCA 2007). The contract terms "should be given their natural meaning or the meaning most commonly understood in relation to the subject matter and circumstances, and reasonable construction is preferred to one that is unreasonable." *Thompson v. C.H.B., Inc.*, 454 So.2d 55, 57 (Fla. 4th DCA 1984). Relevant here, Florida law provides that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Fla. Stat. § 672.204(1). Florida's statute encompasses instances where an agreement becomes effective as soon as a customer opens the product. *See, e.g.*, *Dye v. Tamko Bldg. Prods., Inc.*, 275 F. Supp. 3d 1314, 1320–21 (M.D. Fla. 2017) (discussing "agreements by which the purchaser is bound once the product is opened") (citing *TracFone Wireless, Inc. v. Pak China Grp. Co. Ltd.*, 843 F. Supp. 2d 1284, 1298 (S.D. Fla. 2012)).

Plaintiff here does not contest that a valid arbitration agreement exists between the parties, as the instant Motion is unopposed (Doc. 14, at 20–21). Based on the

International Mobile Equipment Identity number, Defendant has determined that Plaintiff activated his Motorola Moto E5 on January 12, 2019 (Doc. 14, at 6). According to the Fragale Declaration, Motorola's terms and conditions, including the Arbitration and Opt-out Provision, were presented and accepted to activate Plaintiff's phone (Doc. 14-1, ¶ 10). Defendant states it has no record of Plaintiff rejecting or opting out of the arbitration agreement (Doc. 14, at 6). Further, it is clear from the case law outlined in the Motion that Florida courts have contemplated and approved of enforcing arbitration agreements in similar instances. *See TracFone Wireless, Inc. v. Pak China Grp. Co. Ltd.*, 843 F. Supp. 2d 1284, 1298 (S.D. Fla. 2012) (finding that a valid contract was created when the consumer opened the package of a TracFone, thereby accepting the terms of service); *Salco Distribs., LLC v. iCode, Inc.*, No. 8:05–CV–642–T–27TGW, 2006 WL 449156, at *2 n.5 (M.D. Fla. Feb. 22, 2006) (describing clickwrap agreements); *Dye v. Tamko Building Products, Inc.*, 908 F.3d 675, 681–83 (11th Cir. 2018) (holding that an arbitration agreement included in a shrinkwrap agreement was binding upon opening the package).

In this case, the operative language in the Arbitration Agreement states that "[a]ny controversy or claim arising out of or relating to any Motorola product will be resolved by binding arbitration, instead of in court, unless you opt out as explained below" (Doc. 14, at 5, 16). The plain meaning of this provision indicates that the parties agreed to submit their disputes "arising out of or relating to any Motorola product" to arbitration. Thus, this Court concludes that a valid arbitration agreement exists between the parties, as construed under Florida contract law, and the scope of

the arbitration agreement encompasses the instant dispute. Such a conclusion is consistent with the FAA's goal of enforcing valid arbitration provisions.

### III.   Conclusion

Accordingly, after due consideration and for the foregoing reasons, it is hereby **RECOMMENDED**:

1. Defendant's Motion (Doc. 14) be GRANTED and that the case be administratively closed and stayed pending arbitration.

**IT IS SO REPORTED** in Tampa, Florida, on this 2nd day of May, 2024.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

A party has fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1). **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**

cc:    Hon. Mary S. Scriven
        Counsel of Record